UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOBBY KIMBROUGH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08 CV 1825 ERW(LMB) |
| ) | |
| TROY STEELE,[1] ) | |
| ) | |
| Respondent. ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Bobby Kimbrough for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

## Procedural History

Petitioner is presently incarcerated at Potosi Correctional Center in Potosi, Missouri, pursuant to the judgment and sentence of the Circuit Court of St. Louis County, Missouri. See Resp't Ex. C at 75-79. Petitioner was found guilty after a jury trial of stealing a motor vehicle, assault of a law enforcement officer in the second degree, armed criminal action, property damage in the first degree, leaving the scene of an accident, and resisting arrest. See id. at 61-67. He was sentenced to a total of thirty years imprisonment. See id. at 75-79.

Petitioner raised one point on direct appeal from the trial court's judgment and sentence.

---

[1]Petitioner is currently incarcerated at Potosi Correctional Center. Troy Steele is Warden of Potosi Correctional Center. As such, Troy Steele is substituted for Don Roper as proper party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

See Resp't Ex. A. Petitioner argued that the trial court plainly erred in allowing the victim to testify that petitioner previously threatened him with a gun. See id. On May 17, 2005, the Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment. See Resp't Ex. D.

On September13, 2005, petitioner filed a pro se motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Louis County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. G at 4-8. After the appointment of counsel, petitioner filed an Amended 29.15 Motion and Request for Evidentiary Hearing on January 17, 2006. See id. at 14-32. Petitioner argued that he received ineffective assistance of counsel in that trial counsel failed to disqualify four venire persons on the basis of their relationships with individuals in law enforcement or relationship to law enforcement. See id. The motion court denied petitioner's amended motion for post-conviction relief in all respects after an evidentiary hearing. See id. at 53-57. Petitioner filed a timely notice of appeal from the denial of post-conviction relief. See id. at 60.

In his appeal from the denial of post-conviction relief, petitioner argued that the motion court clearly erred in denying his motion for juror contact. Petitioner also argued that the motion court clearly erred in denying his motion for post-conviction relief because trial counsel was ineffective in failing to disqualify four venire persons on the basis of their relationship with individuals in law enforcement or relationship to law enforcement. See Resp't Ex. E. On November 28, 2007, the Missouri Court of Appeals for the Eastern District affirmed the judgment of the motion court. See Resp't Ex. H.

On November 24, 2008, petitioner filed a pro se petition for a writ of habeas corpus,

raising the following grounds for relief: (1) the Missouri Court of Appeals misapplied the law; (2) he was denied a fair trial because four jurors had some type of relationship with law enforcement; (3) he received ineffective assistance of counsel because trial counsel failed to strike for cause jurors on the basis of their relationship with law enforcement; and (4) he is actually innocent. (Doc. No. 1).

On March 4, 2009, respondent filed a Response to Order to Show Cause, in which he argues that the petition should be dismissed as untimely. (Doc. No. 9). Respondent argues in the alternative that petitioner's first ground should be dismissed for failure to state a cognizable claim, and his second and fourth grounds should be dismissed because he failed to advance them in state court. Finally, respondent contends that all of petitioner's grounds lack merit.

### **Facts**[2]

The sufficiency of the evidence is not in dispute. On October 7, 2002, James Hellyer ("Victim") parked his car on the street in front of his house. After getting out of the car, a man, later identified as petitioner, put a gun against Victim's chest and said, "Give up the keys Jimmy." Petitioner told Victim to lay face-down on the ground. As Victim dropped to the ground, petitioner said he would blow the back of Victim's head off if he moved. Petitioner and another man got into Victim's car and drove away. After they left, Victim went inside and his mother called the police. Victim told the police that he believed the man who robbed him was probably petitioner, who lived in the neighborhood, because he recognized petitioner's voice, build, and height. Victim later identified petitioner in a photo line-up.

---

[2]The court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming petitioner's convictions. See Resp't Ex. D at 2-3.

Two days later, Officer Eric Balkenbush attempted to stop a car that failed to maintain its lane. This car was the same make and color of Victim's car. After driving for six blocks, the car abruptly stopped and Office Balkenbush swerved to the side of the car to avoid a collision. The driver, later identified as petitioner, turned his wheel towards Officer Balkenbush's car, hit it, and drove off at a high rate of speed. Officer Balkenbush and a second police officer continued to pursue the car. During pursuit, a dispatcher informed Officer Balkenbush that the car was stolen. Eventually, the car struck a concrete light pole. Petitioner climbed out of the car and began running away on foot. Both police officers chased petitioner and arrested him. Petitioner kicked, pulled, and struggled as the police officers attempted to take him into custody. While in custody, petitioner waived his rights and agreed to be interviewed. Petitioner claimed that he bought the car without a title for one hundred dollars.

## **Discussion**

**I.**     **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

        State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." <u>Id.</u> Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 1410.

## II.    <u>Timeliness Under the AEDPA</u>

Respondent argues that the petition is untimely under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA).

The AEDPA imposed a one-year period of limitation on federal petitions for habeas corpus. The governing provision provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). For purposes of the AEDPA, a judgment becomes final "by the

5

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Additionally, §2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Further, "for purposes of § 2244(d)(2), 'an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" Marx v. Gammon, 234 F.3d 356, 357 (8th Cir. 2000) (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)).

Respondent, citing Riddle v. Kemna, 523 F.3d 850, 855 (8th Cir. 2008), argues that the statute of limitations for the filing of a habeas petition began to run when the mandate was issued by the Missouri Court of Appeals in petitioner's direct appeal. The United States Supreme Court, in the recent case of Gonzalez v. Thaler, No. 10-895, 2012 WL 43513 (Jan. 10, 2012), held that the judgment becomes final under § 2244(d)(1)(A) when the time for seeking review in the state's highest court expires, therefore abrogating Riddle. This change in law does not, however, affect the outcome in this case as the petition is untimely under either analysis.

For Missouri prisoners who do not file a motion for transfer to the Missouri Supreme Court, the limitations period begins to run fifteen days after the Missouri Court of Appeals issues its opinion affirming the lower court. See Mo. S. Ct. R. 83.02. The Missouri Court of Appeals issued its opinion affirming the Circuit Court of St. Louis County on May 17, 2005. The statute of limitations therefore began to run fifteen days later, on June 1, 2005. Petitioner mailed the petition in this case 1,268 days later on November 20, 2008. See Resp't Ex. N.

The time during which a properly filed post-conviction relief motion is pending tolls the

6

statute of limitations. 28 U.S.C. § 2244(d)(2). This tolling period lasted from September 13, 2005 (filing date), through February 8, 2008 (mandate issued by Missouri Court of Appeals). Resp't Ex. G at 1; Resp't Ex. M. Petitioner did not file an appeal in the Missouri Supreme Court. A such, the tolling period amounts to 878 days, and the total elapsed time must be reduced from 1,268 to 390 days. Petitioner's petition thus exceeds the one-year statute of limitations imposed by the AEDPA by twenty-five days.[3] Accordingly, the petition is barred by the statute of limitations.

### III.    Procedural Default

Respondent contends that petitioner has procedurally defaulted his second and fourth grounds for relief. It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct.

---

[3]Under Riddle, the statute of limitations would begin to run on June 23, 2005, the day after the Missouri Court of Appeals issued its mandate. The petition would have been three days late, rather than twenty-five days late, under this analysis.

7

App. 1980)), cert. denied, 513 U.S. 983 (1994).

To avoid procedural default, a petitioner must show both cause and prejudice. See Engle v. Isaac, 456 U.S. 107, 110 (1982). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907(1988).

In his second ground for relief, petitioner appears to argue that the trial court should have disqualified four jurors due to their relationship with law enforcement. Petitioner never raised such an argument at trial or on direct appeal. Petitioner offers no basis for his failure to raise this claim in state court. As such, this ground for relief is procedurally defaulted.

In his fourth ground for relief, petitioner contends that he is actually innocent because he was found not guilty of assault of a law enforcement officer, armed criminal action, and resisting arrest on October 29, 2002. Petitioner argues that counsel failed to bring this matter to the attention of the jury and judge and that counsel failed to honor the subpoena of another public defender. Petitioner failed to raise this claim in state court and offers no explanation for his failure to raise the claim. As such, petitioner's fourth ground for relief is procedurally defaulted.

Under a limited exception to the procedural default rule, a federal habeas court may reach the merits of a defaulted claim where the petitioner can demonstrate a "miscarriage of justice," or actual innocence. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986). To establish a claim of actual innocence, a petitioner must demonstrate that a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Id. at 324. A petitioner must show, in light of all of the evidence, including the new evidence, "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327.

As will be discussed further with regard to petitioner's fourth ground for relief, petitioner has failed to demonstrate based on new evidence that he is actually innocent. Thus, petitioner cannot excuse his procedural default.

Accordingly, the undersigned finds that petitioner's second and fourth grounds for relief are procedurally defaulted.

**IV.     Petitioner's Claims**

The undersigned has already found that the petition is untimely and that petitioner's second and fourth grounds for relief are procedurally defaulted. Even if petitioner's claims were not untimely or procedurally defaulted, petitioner's claims fail on their merits as well.

    **1.     Ground One**

In his first ground for relief, petitioner argues that the Missouri Court of Appeals "overlooked or misinterpreted material matters of law and fact and misapplied the law to the facts." Petition at 5. Petitioner also states that "this case presents questions of law of general interest and importance that should be reexamined by this court." Id.

Respondent argues that petitioner's first ground for relief fails to meet the requirements of Rule 2(c) because it does not allege particularized facts that entitle him to relief.

Rule 2(c) of the Rules Governing Section 2254 Cases requires that a petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground[.]"

A "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule 2(c)." Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990). "[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Id. at 334.

In his first ground for relief, petitioner merely asserts a general claim that the Missouri Court of Appeals misapplied the law and that his case should be "reexamined." As such, petitioner has failed to set forth particularized facts which entitle him to relief pursuant to Rule 2(c).

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.  Ground Three[4]**

In his third ground for relief, petitioner argues that he received ineffective assistance of counsel in that trial counsel failed to strike for cause four venire persons on the basis of their associations with law enforcement. Petitioner also claims that trial counsel failed to inform the court of juror misconduct.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show

---

[4]Petitioner's second and third grounds for relief both relate to the seating of four jurors. In the interest of clarity, the undersigned will discuss these claims out of turn.

that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687(1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689).

Petitioner's claim relates to four jurors: Cunningham, Dean, Roth, and Coffman. The undersigned will discuss each separately.

During jury selection, Juror Cunningham stated that his brother worked in law enforcement for eight years. Resp't Ex. I at 73-74. Juror Cunningham stated that his brother had been "shot at" before. Id. at 74. When asked by the prosecutor if this instance of assault would affect him if he were selected as a juror, Juror Cunningham stated: Maybe--no, I don't think it would now. Back then it bothered me, but it doesn't now." Id. at 75. Juror Cunningham indicated that it bothered him in the past because he was "real close" to his brother, but indicated that he could be fair and impartial to petitioner. Id. Juror Cunningham also described an incident in which an individual was shooting at cars as they drove by and shot his vehicle. Id. at 138. When asked by defense counsel if he could serve fairly in petitioner's case, Juror Cunningham

11

indicated that he could, stating "I would go accordingly to the case. I wouldn't reflect on what happened to me or that individual." Id. at 140.

Juror Dean stated that she was a security officer in the Missouri Air National Guard, which was the same as a military police officer. Id. at 76. Juror Dean indicated that her duties consisted of guarding aircraft and controlling entry rather than patrolling or arresting people. Id. When asked by the prosecutor if there was anything about this position that would affect her in any way in petitioner's case, Juror Dean stated: "No." Id. at 77. Juror Dean later stated that she met a Ferguson police officer, "Dave," while qualifying for the use of a handgun. Id. at 117. Juror Dean indicated that there was nothing about "that experience that [she] had at Ferguson Police Department that would affect [her]" in petitioner's case. Id. at 118. Juror Dean also clarified that she only served as a security officer once a month. Id. at 148. Defense counsel asked Juror Dean if she "f[elt] like [she] might favor the State maybe a little bit because of [her]...law enforcement intent." Id. at 149. Juror Dean responded: "No, not at all." Id. Defense counsel asked whether she could "evaluate cases and be comfortable with [her] services and...follow the Court's instructions." Id. Juror Dean responded: "Yes, sir." Id.

Juror Roth stated that she was raised with someone who was a Florissant police officer, her grandfather was a retired police officer in San Diego, and her cousin's husband was a DEA agent. Id. at 77. Juror Roth stated that her cousin's husband talked about his undercover work. Id. Juror Roth indicated that she did not attend Florissant police functions and that she did not know any other Florissant police officers through her family friend. Id. at 78. Juror Roth stated that her friend did discuss some of his cases at family functions. Id. When asked if she would be able to be fair and impartial if she were selected as a juror even though she had a close friend that

12

was a police officer, Juror Roth stated: "Yes." Id. Defense counsel later asked Juror Roth if she would "favor the State a little more." Id. at 152. Juror Roth initially replied: "Not necessarily." Id. Juror Roth then stated: "I'm sorry. No, I would not." Id.

Finally, Juror Coffman stated that her "little sister" had dated a police officer and that she and her family were still friends with the police officer. Id. at 81-82. Juror Coffman stated that he had not spoken much about his experiences other than telling a few stories. Id. When asked if there was "anything about that that would affect [her] in any way," Juror Coffman replied, "[n]o." Id.

Petitioner argued in his post-conviction relief motion that trial counsel provided ineffective assistance in that he failed to strike, either for cause or by peremptory strike, the four jurors discussed above based on their relationship with law enforcement. See Resp't Ex. G at 14-32. The motion court held an evidentiary hearing, at which petitioner and petitioner's trial counsel testified. See Resp't Ex. J. Defense counsel testified that his strategy was not to automatically exclude anyone with police officer connections, although police officer connections were important and he listened carefully to the jurors' responses. Id. at 7.

With respect to the four jurors at issue, defense counsel stated that he did not believe there was a basis to strike them for cause, and that he did not exercise peremptory strikes against them because he thought they would be reasonable jurors. Id. at 12. Defense counsel testified that it was his position that the case was overcharged, and that people who had connections to real police officers would understand the reality of the situation and be somewhat sympathetic. Id. at 12-13. With regard to Juror Dean, defense counsel testified that he wanted her on the jury because she was African-American, she appeared to be independent, and he had the impression

that she would be sympathetic to petitioner's case. Id. at 14.

Petitioner testified that he told his attorney that he was concerned about all of the venire persons that had connections to law enforcement. Id. at 33. Petitioner stated that he witnessed improper contact at trial between Jurors Roth and Dean and witnesses Officer Balkenbush and David Jenkins. Id. at 34. Petitioner testified that Juror Dean and Officer Balkenbush waved at each other, and that Officer Balkenbush told Juror Roth to "get his ass, girl" as he stepped down from the stand. Id. Petitioner also stated that Juror Dean and David Jenkins waved at each other. Id. at 36. Petitioner testified that he told his attorney about this improper conduct and that his attorney told him not to worry about it. Id. at 35.

The motion court, which was also the trial court, stated that it had not seen any of the alleged improper conduct. Id. at 43. In addition, Bailiff Robert Griffin testified that he was the bailiff in charge of petitioner's jury and observed the testimony of the witnesses at issue. Id. at 43-44. Bailiff Griffin testified that he observed the witnesses as they exited the courtroom, and there was no conversation with any of the jurors. Id. at 44.

The motion court denied petitioner's motion, finding that petitioner failed to establish that there was any deficiency in the conduct of his trial counsel. See Resp't Ex. G at 56. The court found that there was no legal basis for a motion to strike for cause. Id. at 54. The motion court further found that petitioner failed to establish that he was prejudiced in any way due to the actions of trial counsel. Id. at 56.

Petitioner raised the same claim on appeal from the denial of post-conviction relief. See Resp't Ex. H at 2. The Missouri Court of Appeals held as follows:

> [Petitioner] has not identified, and we fail to see, any basis for striking such jurors

14

for cause. "Affiliation with law enforcement officials alone is not sufficient to sustain a challenge for cause." State v. Roderick, 828 S.W.2d 729, 731 (Mo. App. E.D. 1992).

       The motion court further found that trial counsel was not ineffective in failing to remove four venire persons through peremptory strikes. Specifically, the motion court found that trial counsel believed that such venire persons would be good for the defense.

       At Movant's hearing, trial counsel testified that during voir dire, he typically listens for police contacts. Trial counsel stated, "Obviously when people comment on a police officer connection, that's real important, and you try to pay attention to it and listen to what they have to say and then make an assessment." Moreover, with regard to the specific venire persons at issue here, trial counsel testified that he did not strike them because he "assumed that they would be reasonable jurors." In addition, trial counsel stated that he thought the case was "overcharged" and that venire persons who "had connection[s] to real police officers and real people that were shot at or where the car hit them or anything like that, they would see the reality of this situation and be somewhat sympathetic."[5] Thus, trial counsel's failure to peremptorily strike venire persons constituted trial strategy. A movant's claim for ineffective assistance of counsel cannot be based on reasonable choices of trial strategy. Lawrence v. State, 160 S.W.3d 825, 830 (Mo. App. S.D. 2005). Consequently, the trial court did not err in denying [petitioner]'s Rule 29.15 motion. Point denied.

Resp't Ex. H at 4-5.

The decision of the state courts is not contrary to or an unreasonable application of clearly established federal law. The Missouri Court of Appeals performed a proper Strickland analysis and found that counsel was not ineffective in failing to remove the four jurors. This finding is supported by the record. All of the jurors stated that his or her connection to law enforcement would not affect his or her ability to fairly and impartially weigh the evidence in petitioner's case. As such, trial counsel had no legal basis for requesting that the jurors be disqualified for cause. See United States v. Nazarenus, 983 F.2d 1480, 1484 (8th Cir. 1993) (trial judge did not abuse his discretion in refusing to strike for cause two prospective jurors who had relationships with law

---

[5] The Court's opinion included the following footnote: "In fact, [petitioner] was found guilty of lesser crimes on two counts. Specifically, [petitioner] was found guilty of the lesser included offense of stealing a motor vehicle, rather than first-degree robbery and second-degree assault of a law enforcement officer, rather than first-degree assault of a law enforcement officer."

15

enforcement given jurors' assurances of impartiality).

Trial counsel testified that he did not exercise peremptory strikes against the jurors at issue because he thought they would be reasonable jurors. Trial counsel indicated that it was his theory that the case was overcharged, and that people who had connections to law enforcement would understand this and be sympathetic to petitioner. Thus, trial counsel's decision not to exercise peremptory strikes against the jurors at issue was reasonable trial strategy.

Further, petitioner is unable to demonstrate prejudice as a result of trial counsel's failure to strike the four jurors in question. In fact, as the Missouri Court of Appeals noted, petitioner was found guilty of lesser crimes on two counts. Specifically, petitioner was found guilty of the lesser included offense of stealing a motor vehicle, rather than first-degree robbery; and second-degree assault of a law enforcement officer, rather than first-degree assault of law enforcement. Petitioner cannot demonstrate that the result would have been different had trial counsel struck the four jurors at issue.

Finally, if petitioner is arguing that counsel was ineffective for failing to report inappropriate contact between jurors and witnesses, this claim also fails. First, petitioner failed to raise this claim on appeal and offers no cause for his failure to raise the claim in state court. As such, petitioner has procedurally defaulted this claim. Further, the claim fails on its merits. The motion court, which was also the trial court, noted during the hearing that it had not seen any of the alleged improper conduct. Resp't Ex. J at 43. The court held that petitioner's claim of juror misconduct "was not credible and [was] refuted by the record." Resp't Ex. G at 55. In addition, Bailiff Robert Griffin testified that he was the bailiff in charge of petitioner's jury and that there was no conversation between the witnesses and the jurors.

16

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### 3. Ground Two

In his second ground for relief, petitioner states that Jurors Cunningham, Dean, Roth, and Coffman served on his jury and that they all "had some type of relationship with law enforcement, whether it was personal or professional relations." Petition at 6. Petitioner appears to argue that the trial court should have disqualified the jurors due to their relationship with law enforcement.

The undersigned has found that petitioner procedurally defaulted this claim by failing to raise it in state court. This claim fails on its merits as well. As previously discussed with respect to petitioner's third ground for relief, there was no basis to exclude these jurors for cause, as they each testified that his or her relationship with law enforcement would not affect his or her ability to fairly and impartially weigh the evidence in petitioner's case.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

### 4. Ground Four

In his fourth ground for relief, petitioner argues that he is actually innocent because he was found to be not guilty of assault of a law enforcement officer, armed criminal action, and resisting arrest on October 29, 2002. Petitioner states that trial counsel "failed to bring this matter up in front of the jury and judge" and that counsel failed to honor the subpoena of another public defender. Petition at 10.

"Claims of actual innocense based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in

17

the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

In this case, petitioner has failed to present new evidence that establishes his innocence. Petitioner's claim that he was acquitted of the charges of assault of a law enforcement officer, armed criminal action, and resisting arrest on October 29, 2002 lacks merit. The offenses for which petitioner was charged occurred on October 7, 2002, only three weeks prior to this date, and the complaint was not even filed until December 23, 2002. Resp't Ex. C at 1. Petitioner has failed to introduce any evidence demonstrating his innocence.

As previously discussed, if petitioner is attempting to raise an ineffective assistance of counsel claim, this claim is procedurally defaulted. Further, petitioner cannot demonstrate that trial counsel was ineffective in failing to raise a meritless claim.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

## V. **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a

constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Bobby Kimbrough for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 26th day of January, 2012.

/s/ Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE